**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON**

IN RE:

**MILES ROAD, LLC**                                                                 **CASE NO. 10-50958**

**DEBTOR**

**FINDINGS OF FACT, CONCLUSIONS OF LAW**
**AND ORDER**

This matter is before the court as result of emergency motions filed by the debtor in the main bankruptcy case referenced above (Docket # 26) and in Adversary Proceeding No. 10-5032, *Miles Road, LLC vs. Kentucky Bank* (Docket # 15). The following are Findings of Fact and Conclusions of Law made pursuant to Federal Rule of Bankruptcy Procedure 7052. A copy of this order is to be entered in the records of the main bankruptcy case and the adversary proceeding.

**PROCEDURAL BACKGROUND**

Miles Road, LLC (the "Debtor") seeks emergency relief under 11 USC §105 and/or §364(c), approving a financing proposal for the Debtor funded by some but not all of the individuals involved in the Debtor LLC. The proposal is conditioned upon entry of an injunction staying the Jessamine Circuit Court action by Kentucky Bank against the non-debtor individuals. The Debtor's offered basis for the proposed injunction is that without such a stay, the individuals will be unable or unwilling to provide the proposed financing to the Debtor. The individuals are Dermonti Dawson, James A. Hughes, Mark Phillips, John W. Langley, and Jerry Woodall (the "Individuals"). Mr. Dawson is not participating in the proposed financing. The Debtor's emergency motions came on for hearing at 9:00 a.m. on Monday, April 12, 2010, and were continued for an evidentiary hearing on Wednesday, April 14 at 9:00 a.m.

1

Appearances were entered by Gregory Pavey and David Royse, counsel for Kentucky Bank; Constance Gullette Grayson, Robert Gullette, Jr. and Robert Gullette III for the Debtor, Miles Road, LLC; Laura Day Delcotto for Dermonti Dawson; W. Thomas Bunch for James A. Hughes; and Kathryn Warnecke Ryan for Jerry Woodall.

Having heard all of the documentary and testimonial evidence submitted at the hearing and having reviewed the oral and written arguments of counsel, the Court hereby makes the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. The Debtor offered testimony of Belinda Amburgey by Affidavit and live appearance. Ms. Amburgey is president of Bellerive Development Company, which performs management functions for a number of various entities owned in whole or in part by James A. Hughes, including the Debtor, Miles Road, LLC. Ms. Amburgey's Affidavit is part of the record herein.

2. Ms. Amburgey testified that the principal purpose of Miles Road, LLC is the ownership and development of a single and multi-family residential development in Nicholasville, Jessamine County, Kentucky. The LLC acquired the property in 2002 and began selling lots in 2004. This development consists of three phases, two of which have been developed, and one of which is still undeveloped raw land. Phase I consists of 232 lots (153 single family and 79 duplex). Two Hundred Twenty-Five (225) of those lots have been sold since the beginning of the development. Phase II consists of 178 single family lots. One Hundred Nine (109) of these lots remain for sale.

3.      Ms. Amburgey testified that a total of two (2) lots were sold in 2009. Zero (0) lots were sold in 2008. Based on tax returns submitted with her Affidavit, she agreed that the number of lots sold in 2007 probably approximated nine (9) or ten (10).

4.      Ms. Amburgey testified that from 2007 through the present, the vast majority of income for the LLC has come from lot sales, with some additional nominal amounts from rentals. The tax returns submitted as exhibits with Ms. Amburgey's Affidavit indicate that the gross receipts of the LLC in 2007 were $408,000; in 2008 were $0; and in 2009 were $44,000.

5.      Ms. Amburgey described a proposal for reorganization and financing in paragraphs 8 through 11 of her Affidavit. Ms. Amburgey's Affidavit provides very limited detail about the timing and amounts of payments and reserves, the mechanics for putting these amounts in place, and what, if any, provisions will be made to ensure against depletion of the Individuals' assets if a stay against the Jessamine Circuit Court judgment is entered. When asked about these provisions, Ms. Amburgey could provide little or no further explanation. She did testify that no written agreement had been signed among the members, there had been no resolution or other formal documentation by the LLC of any such plan, and to her knowledge there were not any transactional documents to put such a plan into place.

6.      Ms. Amburgey's Affidavit makes no mention of how the outstanding accrued interest on the defaulted loan or attorney's fees will be paid. In her testimony, Ms. Amburgey testified generally that she thought such costs would be paid by the individual members. With respect to future taxes, Ms. Amburgey thought the members would pay those, but did not know what would happen if they did not.

7.      Ms. Amburgey acknowledged that the LLC had received a number of notices from the City of Nicholasville regarding outstanding infrastructure obligations for the

3

development, dating from as recently as February of 2010 back to March of 2008. She was unaware of any activity that had been taken by the LLC in at least the last twelve months to address these obligations, other than that they were bonded.

8.  Ms. Amburgey acknowledged that appraisals from 2002, 2004 and 2005 submitted with her Affidavit were probably not reliable reflections of the *current* value of the property. Although she acknowledged having received and reviewed an appraisal from July 2009 setting the value of the property at $2,370,000, she acknowledged that the 2009 appraisal was based on a retail value of $28,000 per lot, an amount higher than what is being realized at present.

9.  Ms. Amburgey offered no testimony to support the Debtor's position as to the current value of the property other than the fact that the Debtor had listed $4,092,500 in Schedule D of the Debtor's filings. Neither Ms. Amburgey's Affidavit nor her live testimony offer any description of how the Debtor arrived at this valuation. The Court does note that in paragraph 8 of Ms. Amburgey's Affidavit she projects that 109 lots can be sold over the next thirty-six (36) months at increasing prices. The total of those projected sales is $3,092,500. By deduction, this would suggest the Debtor has also assigned a value of $1,000,000 to the undeveloped "Phase III" tract. The Court would note that if this is, in fact, the basis of the value set forth on Schedule D, this value fails to consider that a potential lot sale (or 49 of them) three years from now at $32,500 does not equate to a present value of $32,500 per lot.

10.  Ms. Amburgey testified generally about her opinion that the real estate market was improving. She indicated that there was a recent contract for a sale at $22,000 (that is not a part of the record), but this transaction had not been able to close because of problems with title insurance. She generally referenced data reflecting increased building permit activity in

4

Jessamine County. She did not offer any specifics or any documentation in this regard. The plan described in Ms. Amburgey's Affidavit would require, on average, that three (3) or more lots be sold each month and that the price increase incrementally over three years from $22,000 to $32,000 per lot, an increase of $10,500 or of nearly 50% per lot by the third year. She acknowledged that only two lots were sold in 2009, none in 2008, and perhaps nine to ten were sold in 2007.

11. Ms. Amburgey testified that Mr. Hughes had historically handled most of the operations of the LLC, but that he was currently incapacitated due to a serious health condition. She hopes he will return to work, but does not know if or when that will occur. Ms. Amburgey testified that Mark Phillips has been named Manager of the LLC and that he previously did not have any day-to-day involvement with the activities of the LLC. She likewise did not recall that any of the other members of the LLC had any day-to-day involvement with the activities of the LLC. She believes the members communicate informally about matters. While she believes the LLC has held meetings she did not know when the LLC last had a meeting.

12. The Debtor also offered testimony of Dan Drotovick by Affidavit and live appearance. Mr. Drotovick testified that he is employed by an entity controlled by Mr. Hughes and is involved in marketing and sales of lots in the Miles Road Development.

13. Mr. Drotovick's Affidavit and live testimony indicated his belief that there is an increased interest in residential lots that signals a light at the end of the tunnel of the current economic downturn. He referenced the $22,000 contract for sale described by Ms. Amburgey. He also described two calls he has received from individuals expressing that other individuals have some interest in looking at lots for sale. No offers to purchase have been made by these individuals. He could not recall any other contacts within the last month.

14. Ms. Amburgey did testify that she was generally familiar with Mr. Hughes' personal financial condition. She testified that she assists him in preparing Financial Statements. She testified that the last Financial Statement she assisted Mr. Hughes in preparing was a June 1, 2009, financial statement signed and dated by Mr. Hughes on August 11, 2009. This Financial Statement stated a Net Worth of $32,661,547. It stated Total Assets of $83,647,686, of which Current Assets (Cash/Escrows, Marketable Securities and other current assets) were $10,920,900. It stated Total Liabilities of $50,986,139.

15. No evidence was offered by the Debtor or by any individual regarding the financial conditions of the other individuals.

17. The Debtor has submitted Schedule F of Creditors Holding Unsecured Nonpriority Claims, which lists nine (9) creditors with enumerated claims totaling $23,951.27. Ms. Amburgey testified that six (6) of these creditors are entities owned or controlled by the Individuals involved in Miles Road LLC.

18. Kentucky Bank submitted exhibits which were admitted without objection. These exhibits and the record in this case demonstrate that the LLC as well the Individuals obligated themselves on a March 18, 2008, Promissory Note to Kentucky Bank in the amount of $3,461,737.82. That note matured on September 18, 2009 and remains unpaid. Kentucky Bank has proceeded with a foreclosure action against the LLC and the individuals in Jessamine Circuit Court. A judgment was entered against the LLC but a Motion to Alter, Vacate or Amend was filed by the LLC based on an alleged calculation error, and further proceedings on that Judgment were stayed as part of the Automatic Stay entered herein. The action proceeded against the Individuals, and on April 8, 2010, the Jessamine Circuit Court ruled that Kentucky Bank was entitled to Summary Judgment and directed counsel to submit a Judgment consistent with the

6

Court's ruling. This emergency motion was subsequently filed, and as of this time the Jessamine Circuit Court has not taken further action with respect to the Judgment.

Based on all of the foregoing, the Court concludes as follows:

## **CONCLUSIONS OF LAW**

The Debtor seeks relief under 11 USC §105 and/or §364(c), (1) approving a financing proposal for the Debtor funded by some but not all of the Individuals and (2) entering an injunction staying the Jessamine Circuit Court action by Kentucky Bank against the non-debtor individuals, on the basis that without such a stay the Individuals will be unable or unwilling to provide the proposed financing to the Debtor.

Injunctive relief under §105 is an "extraordinary and drastic remedy with the burden of proof being on the debtor to establish under the traditional requirements that it is entitled to injunctive relief. If the debtor fails to satisfy this burden, the injunction may not issue." In re Costa and Head Land Company, 68 B.R. 296, 298 (N.D. Alabama 1986); See also In re Third Eighty-Ninth Associates, 138 B.R. 144, 146 (S.D. N.Y. 1992) ("The debtor bears the burden of proof in obtaining the 'extraordinary and drastic' remedy of an injunction").

To determine if injunctive relief is appropriate based on the considerations described by the Sixth Circuit in In re Eagle-Picher, 963 F. 2d 855 (6th Cir. 1992), the Court must balance (1) the likelihood of the plaintiff's success on the merits, (2) whether the plaintiff will suffer irreparable injury without the injunction, (3) the harm to others which will occur if the injunction is granted, and (4) whether the injunction would serve the public interest. Id. at 858. (In the present posture the "plaintiff" referenced in these considerations is the Debtor LLC in this proceeding and the Plaintiff/Movant in the related Adversary Proceeding.)

7

Based on consideration of all of the factors described in Eagle-Picher, the Court finds that the Debtor has failed to provide sufficient proof to justify the requested relief.

First, the Court believes the Debtor has not provided sufficient proof that a reorganization *as proposed* is likely to be successful, the Court recognizing that this case is in the early stage of reorganization having been filed less than 3 weeks ago (March 24, 2010).  Further, the Court recognizes that the Debtor does not propose use of the bank's collateral, the land.  Although the Debtor is required to maintain the property, its value is not diminished by use.  However, the Debtor's success in reorganizing is dependant mainly on a successful turnaround in the real estate market generally.  Additionally, as noted in Findings 5 and 6 above, the Debtor has offered little or no proof that specific plans are in place for the proposed payment of post-petition interest.

Second, the Court does not believe the Debtor has demonstrated that it will be irreparably injured if the requested injunction does not issue. The Debtor seeks to stay the Jessamine Circuit Court action so a judgment will not be entered against the Individuals.  In analyzing the potential irreparable injury to the debtor, the court in In re Eagle-Picher considered the identity between the debtor and the third-party defendant, and whether the judgment against the third-party defendant would "in effect be a judgment or finding against the debtor." Id. at 861. In Eagle-Picher, the Court found it important that the state court action could divert key employees from the reorganization and that litigation costs could diminish the estate because they were not covered by their insurance policy and that a reservation of rights had already been made by Eagle-Picher's insurer. Id.  Facts such as these have not been demonstrated to exist in the case at hand.

8

Ms. Amburgey indicated that several if not all of the Individuals have other entities and business endeavors in which they are involved, and with the exception of Mr. Hughes' previous involvement, none are involved in the day-to-day operations of Miles Road, LLC.  In Eagle-Pitcher and A.H. Robins, Inc. v. Piccinin, 788 F. 2d 994, 999 (4th Cir. 1986) cited therein, the court pointed out that litigation against the individuals would be paid by the debtor and its insurer and deplete the assets of the debtor. In this case, any recovery by the bank from the Individuals would reduce the liability of the Debtor to Kentucky Bank.  While those Individuals may have the right to seek indemnification from the Debtor, a closely-held company they own, this would at worst result in a wash in terms of the total liabilities of the Debtor.

The Debtor has suggested that without the injunction, the Individuals either cannot or will not provide the proposed limited financing to the Debtor.  While it might be hard to imagine that a creditor would resist an opportunity to have up to 32 months of interest paid, it is nevertheless true that the appraisal referenced in Finding No. 8 reflects, on a relative basis, the extent to which value of the bank's collateral has diminished due to market conditions ($1.50M, 2002 Appraisal, to $1.050M, 2005 Appraisal).  Again, the Debtor's success in reorganization is dependent upon an upturn in market conditions, the Debtor having demonstrated its success in developing then marketing Phase I.  The Debtor has failed to provide any case law to support the premise that it is appropriate to condition post-petition financing under §364(c) upon the granting of a non-debtor stay. As the court in Costa and Head noted, it is difficult to "figure out how §364 can form even an arguable basis for such extraordinary relief." In re Costa and Head Land Company, 68 B.R. 296, 304 (N.D. Alabama 1986). While §364(c) does provide certain incentives for lenders to loan post-petition funds to debtors, the Debtor has provided no support for the contention that a non-debtor stay is an appropriate incentive.  Regardless, even if this is a proper basis for such relief,

9

as noted in Finding Nos. 14 to 16 above, the Court finds that the Debtor has failed to offer sufficient proof to justify the relief in this instance.

The Debtor did not offer material evidence regarding how the public interest, or other individuals and entities, would be harmed if the injunction is not granted. Counsel for the Debtor made conclusory statements about the potential impact on the tax base of Jessamine County and the potential impact on the property values of other property owners. These statements are premised, first, on the assumption that the debt cannot be collected from the Individuals under a state court judgment and, second, on the premise that a sale of the property under orders of this Court will result in a significantly depressed value beyond what might otherwise be expected. Debtor did not offer proof in support of these statements, but even if they have some general validity, the Court finds that under the totality of considerations set forth in <u>Eagle-Picher</u>, the Debtor's assertions in this regard are not as significant as the other matters enumerated in the Court's analysis.

In sum, in giving due consideration to all of the enumerated factors discussed in <u>Eagle-Picher</u>, and balancing these factors in light of the evidence presented, the Court finds insufficient grounds for the relief requested and DENIES the Debtor's Motion for Interim and Final Orders (I) Authorizing Debtor to Obtain Post-Petition Financing; and (II) Granting Adequate Protection to Pre-Petition Lender, and DENIES the request for injunctive relief.

COPIES TO:

David T. Royse, Esq.
Constance Gullette Grayson, Esq.
Kathryn Warnecke Ryan, Esq.
W. Thomas Bunch, Esq.
Laura Day Delcotto, Esq.

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~
**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



**Signed By:**
*Joseph M. Scott, Jr.*
**Bankruptcy Judge**
**Dated: Thursday, April 15, 2010**
**(jms)**